Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good morning. Welcome to a somewhat delayed oral argument from the December panel. I'm glad it was able to work out and I hope past illnesses are overcome and that there aren't any future ones. Good luck to us all on that. We have only one case for the morning. Owensby & Kritikos v. Director, Office of Workers' Comp and James Boudreaux. We'll hear from the petitioner. Thank you, your honor. I feel a little awkward doing this having not done this before, but Owensby & Kritikos and their insurer, Louisiana Workers' Compensation Corporation. We are the employer carrier and the appellant. Let me ask you a quick question and just answer it very quickly. Yes, sir. Tell me why the Louisiana Workers' Compensation Corporation is listed as a party with your client. Is that just a formality? Yes, sir. We're the Longshore and for Owensby & Kritikos. The Louisiana Workers' Compensation Corporation is? Yes, sir. All right, well that makes sense. Thank you. Yes, we're a private insurance company. We're not a state agency. All right, thank you. That's to the extent it may matter. It explains why they're in the case. Yes, sir. The issue before the court is jurisdiction and whether Mr. Boudreaux's is properly under the Longshore and Harbor Workers' Compensation Act or should be better placed under the Louisiana Workers' Compensation Act. The parties have amply outlined the facts and they're really in a dispute. Mr. Boudreaux was in an automobile accident. That's my second question. Does the Longshore and Harbor Workers' Compensation Act pay more benefits than the Louisiana Compensation Act? In certain circumstances, yes, sir, it does. In this case? In this case, I believe so, yes, sir. Not dramatically different, but slightly, Longshore bends are slightly higher, I believe, and there's other issues with Longshore. They're not handled exactly the same. All right. Mr. Boudreaux was injured in an automobile accident when he was struck by another vehicle that ran a stop sign. The vehicle, the lady driving it was looking at her cell phone at the time and hit it. The question is, does he fit better under Louisiana State Workers' Compensation or under the Longshore Act? Jurisdiction under the Longshore Act has to be through the Out-of-Continental Shelf Land Act because he does not qualify, or at least there was no evidence presented that he would qualify as a covered employee under 33-902, so he would have to fit under the Longshore Act through OXLA. As the parties noted in the briefs, the decision in this case really turns on the United States Supreme Court case and interpretation of the causation standard outlined by the Supreme Court in Pacific Operators v. Valladolid. Before we get there, we have to look at the Out-of-Continental Shelf Land Act. We have to look at the operative provision that brings this, or arguably would bring this under the provisions of the Longshore Act. That's been outlined in the brief. It's at 43 U.S.C. 1333B. The pertinent provision is it covers injuries resulting from any occurrence as a result of operations conducted on the Out-of-Continental Shelf. I outlined in my brief, and the Supreme Court stated that when they say resulting from, that plainly suggests causation. There has to be some sort of causation element for the injury being caused by. You agree, don't you, that we're Yes, sir. Don't you also concede that Mr. Boudreaux was within the first part of the test under Valladolid, that he was in the course of his employment, the injury arose out of and in the course of his employment under 33 U.S.C. 9022? The injury was in the course of his employment, but that's not... You concede that in your brief. Correct, but that's not determinative of jurisdiction. I understand that, but I'm just trying to narrow this down. So, it all turns now on just substantial nexus, doesn't it? I think what we're talking about, though, is we're talking about a substantial causal nexus. We have to focus, as the court in Valladolid, you have to focus on was this injury caused by operations conducted on the Out-of-Continental Shelf? This injury was not caused by operations conducted on the Out-of-Continental Shelf. This injury was caused by an inattentive driver who ran a stop sign, and the only potential link... I don't recall Valladolid using the term substantial causal nexus. I just recall substantial nexus arising out of the Out-of-Continental Shelf. The Valladolid court said, is right at the very last... I just have a slip in front of me, but on the very last page, last couple paragraphs, they talk about... The court says, accordingly, we conclude that the Ninth Circuit's substantial nexus is more faithful to the text of 1333B. Understand the Ninth Circuit's to require the injured employee to establish significant causal link between the injury that he suffered and his employers on CS operations. But isn't that substantial nexus, maybe you and I just engaged in semantics. But I think what we're looking at, though, we're looking at their substantial nexus, the phrase, as Justice Scalia pointed out, is something that hasn't got any confines to it. What we're looking at is substantial causal nexus. The Valladolid opinion talks about causation, and it refers to causation, was this caused by... When they go back to the provisions 1333B, they talk about resulting from means caused by, and there has to be some sort of causal link. And they said, but for isn't good enough. There has to be some sort of causal link between the injury that occurred and the operations being conducted on the shelf. The statutory act, the statutory language being resulting from... Yes, sir. Operations on the OCS. I assume you're familiar with our panel opinion last year in Mays. Yes, sir. What in Mays do you find assist your argument as opposed to assisting the other side? First of all, in Mays, the court made, this is kind of a side issue, because it's not really directly related to the case. But in Mays, there was a question about who the employer was and whether the employers, the actual direct employer had to be involved. And this court said... That's not what we're talking about here. We're talking about the component in Mays about the challenge to the jury instructions, which were based on Valadolid. Do you see anything in Mays that assist your position in this case? Because there's a distinction. The court pointed out a distinction between employment issues and causation issues. In this case, yes, he was in the course and scope of his employment, and that's a necessary predicate to making a determination as to whether or not he would be covered by any compensation act. But that's not determinative of jurisdiction. This court made the point to say that causation and employment issues are two separate things. And in this case, they're two separate things. And then the Mays court found that Valadolid requires a link between the injury and the There is no link other than a but-for causation between the injury that occurred and the extractive operations of his employer or the operations of his employer on the shelf. What about the fact that your client, Owensby, paid for Boudreaux's, in some form, I see in the briefs they say it's more like per diem, paid him to travel from his or a cruise ship out to one of the platforms. So, obviously, it was important to Owensby that it have persons who could come out offshore and bring their equipment and assist with these tanks, et cetera, et cetera, as part of the extraction. So, how is that not arising out of operations on the Outer Continental Shelf Act? They needed him out there. He was proceeding to the platform and, unfortunately, was injured in an accident for which you were paying him some form of per diem to undertake in order to get out to the platform. And, Your Honor, the issue as to whether or not he was being paid, whether per diem or however you want to characterize it, is important to a determination of whether or not he's in the issue of whether or not he falls within the jurisdiction of the Act. Every employer who has anybody going offshore, you need a certain number of people to operate platforms and so forth, whether they're being paid to travel or not. They want you there on time. They want you there to be available for the helicopter or the crew boat or whatever. So, that's not, but that's not determinative of whether this results from. Well, I understand it's part of the course and scope which you concede he was in the scope of his employment, course of his employment, but why isn't it relevant because of what you just said? They want him on time because he has important work to do out there. He does 90 percent of his work out on that, on one of the platforms. It's a critical, it's a critical element of the extraction process, isn't it? I would agree, but I think the focus, the focus based on the provisions of the 1333B and the Valola decision, the focus is on the connection between the injury sustained and the operations. And in this case, the injury, if perhaps we were talking about a situation where he was, I don't know, pulling a trailer or something that had his employer's goods on it and that trailer malfunctioned somehow and caused an accident, that might be different, but that's a different factual scenario because the actual scenario we have is he was doing nothing related to his work. I asked him specifically. Well, he was hauling his equipment. His equipment was needed, and I apologize. I don't want to take more than my proper amount of time, but he was hauling the equipment. Your Honor, you're hitting all the points that I need to hit, and I understand. I appreciate that. Well, Mr. Johnson, let me flesh that out just a bit. Why isn't Cardillo, we have a lot of cases in this appeal that I'm not sure about the pronunciation, but the Supreme Court case of 1947, which is talking about transportation and how that fits into the coverage under the equivalent of the Lawnshore Act in that case. So, transportation itself coming and going isn't usually covered, but you do have exceptions. And it does seem to me the respondents have a pretty good argument that the exception applies here, that the compensation for that is considered to be in furtherance of the, it's really more of the first factor in our two-step process of figuring out if it's covered or not, that he was within the scope of his employment. I did not, I know you try to distinguish that case, but don't you accept that transportation itself can be in the course of scope of employment regardless of whether he's paid, et cetera? Oh, it certainly, yes, your honor, it certainly can be if he's being paid or if the employer is providing the means of transportation, it certainly can be. But again, I'd go back to, we have to focus in on what caused his injury and did extractive operations cause his injury and they did not. I mean, we can say, yes, he was in the course and scope, and I'll agree he was in the course and scope, but that doesn't make him covered under the When somebody's transporting himself in this way, and despite the Corgillo case, and apparently no Fifth Circuit cases that have been cited to us, but a few cases from other circuit, that the person will never be within the scope of his employment if he's traveling to the work site, unless he's drilling along the way or something else. I'm not sure what exactly would cover your explanation. When would somebody traveling under your explanation be covered by the Longshore Act? That's a very good question. I don't, I don't know if they, I don't know if they would be if, now take it back. If they're covered, if they're a covered employee under 902, then yes, they would be covered. That's a separate issue. But if you are seeking coverage under the Longshore Act, pursuant to the Outer Continental Shelf Lands Act, you are only covered under the Longshore Act if you are injured as a result of operations that the statute said, as a result of operations conducted on the shelf. And driving is not operations conducted on the shelf. All right, Mr. Johnson, I think we got that point. You got 20 seconds. You got another one you want to close out with? I'll save my time. Thank you, Your Honor. I appreciate it. All right, then. My somewhat dated list shows Miss Smith goes next. Is that how you have figured it out? All right. We'll hear from you, Miss Smith. You're muted right now. There you go. You took care of it. Or maybe I guess the court did. Thank you. Sorry. Our argument is that the substantial nexus only requires a significant causal link in order to be met. So the, what actually caused Mr. Boudreaux's injuries does not need to be an operation on the Outer Continental Shelf. But the operations on the Outer Continental Shelf need to be somewhere in that causal chain. So if you look at 1333B, it talks about the injury. They either need a disability or a death to an employee. And we all agree that Mr. Boudreaux meets an employee. We all agree at this point that he's disabled from his injury. And it needs to occurring as a result of operations conducted on the Outer Continental Shelf for the purpose of exploring, developing, and all of those things. Mr. Boudreaux is a non-destructive tester. He was hired by his employer to go out to platforms on the Outer Continental Shelf to test the vessels or tanks that stored the resources that were extracted directly from the Outer Continental Shelf. So his job was to, once he got on the platform, he would use computers and other equipment that he carried with him every time he went out there to test the validity, I guess, of the structure and make sure it was not about to crack or leak or any of those things. If he found that the structure was not stable, he would say that and the whole process would be shut down for that vessel's sake. So it would have to be taken out of production and repaired before it could continue. Mr. Boudreaux would stay there, a welder would come in and repair it, and then they could turn the platform back on. Miss Smith, how about describing the equipment he was carrying on the day of the accident? You mentioned computers. Yeah, he had a computer and a robotic arm that would follow along the sides or the middle of the vessel. And he told me that the bag weighed about 60 pounds and he had to bring it there. In fact, after the accident, his supervisor went to the scene of his accident, got the equipment from his vehicle, and brought that equipment offshore because somebody still had to get the job done. All right. As I understand it, 90% of his work time, for want of a better term, was on the platforms. What did he do the other 10% when he was onshore? He would sometimes go to land-based facilities to do the same type of testing on those facilities. And we don't have a breakdown of the percentage of natural resources extracted from the land-based facility that came directly from the land the base was on versus the amount that had resources piped in from the Outer Continental Shelf. So we're not sure that percentage at this is what they called it. So if there was no job offshore, he could go just to the shop and do whatever needed to be done, kind of like Mr. Valladolid was doing for his accident at the time he was killed. Otherwise, Mr. Boudreaux... I thought you had finished your answer from Judge Barksdale. Go ahead and finish and I have a question somewhat related. Oh no, I was finished. Well, you can always have more to say to respond to Judge Barksdale. But my question is also to what extent there needs to be line drawing. And Mr. Boyle, I hope I will remember to ask him or he can respond to it as well when his time comes. It seems to me that the trip here is described as well as the facts allowed you to reconstruct it. I'm just wondering what deviations from traveling from the home to a place to catch a helicopter, what additional reasons for the travel? Wanted to visit his daughter along the way, went a little bit out of the way to do that. That's where the accident occurs. Is there a need under the example, really the principal example seems to me is from the 1947 Supreme Court case, which wasn't even directly dealing with the Long Shore Act. And we don't have any Fifth Circuit case on this that you've cited to us. So how do we know that the trip is covered? What do you say here? Not so much was what was in the trunk of his car. I'm thinking more of his route and his mission and additional missions he may have been on as he was eventually going to land or end up at the place to catch the helicopter. I'm not sure if he was catching a helicopter that morning. I think it was a boat out of Freshwater City. But he had to go from his home to Freshwater City and he had to be there at a certain time. His employer needed him to be there at that time. I understand all of that. Very early in the morning. I got that. But what I'm wondering is wouldn't a would you accept that some deviations from that from the necessary direct route might indeed alter the analysis if he had another chore he wanted to go and visit someone along the way. He'd either not stop there yet or he had stopped there yet. Help me with that example. The only deviation he had that morning was... I'm asking you a hypothetical. Yeah. Mr. Boudreau went to McDonald's. That's the furthest deviation he got. He didn't stop to go to a girlfriend's house. He did not stop at Walmart to buy some toiletries that he might need over the next couple weeks even. Like his travel that morning was directly from his home. He picked up breakfast on the way to Freshwater City to be there at the time they needed him there. Are you relying on the facts of your case that the only deviation was basically along the route itself to get breakfast or whatever meal that was? Yes. Do you accept that other deviations may indeed prevent coverage? Yes. If he was going his ultimate destination was wherever to pick up his mode of transportation, but he deviated that for a different purpose or because it was a different route, what would you say creates the problem? I think we would need to look to workers' compensation cases in general to see what gets people outside of the course and scope of employment to see where the line is drawn there. Typically, if what the individual is doing at the time is close enough to their employer's mission as a whole, it's covered in the course and scope of take them outside of workers' compensation for just a small deviation. But for Mr. Boudreaux's case, there's no major deviation. He did not go far enough, in my opinion, in any way from his home to the dock outside of his employer's mission. What do you make of the example in the Ninth Circuit opinion that then established the test that we're looking at? I need to call on Judge Barchet to pronounce the case name Valladolid. Any of the attorneys involved here obviously can pronounce it, I'm sure. But the example the Ninth Circuit used, which was not picked up by the Supreme Court, says an accountant's workplace injury would not be covered even if related to Outer Continental Shelf projects, while somebody's injury is in a helicopter en route to the Outer Continental Shelf. Well, that, again, is just an example or two examples. But insofar as a helicopter or boat ride in this case, the example picks up when the person is basically captive. He's on some mode of transportation that's going to the rig, where here you have somebody in a car who has many options as he goes along the way. That would be one place to draw the line, insofar as coverage, which is only once he's on the boat or helicopter or otherwise. What do you make of that distinction? Mr. Boucher is essentially captive from the time he leaves his home to make it to Freshwater City to get on the boat. He cannot make any deviations in that trip that will get him late to the boat or late to the helicopter, if it were, because once that leaves, it's gone. So his captivity starts. That's simply a timing question, and I don't know how clear the evidence is, is how much of a lag time he had or excess time he had. So other than, I mean, captive is a big strong, but that's the word I use. I can understand why you picked up on it. But he's not captive in any meaningful sense. He just got to get there on time. Yes, to get there on time, he's paid for going there. He's traveling a very far distance from his home. Part of his compensation was mileage and time for getting to Freshwater City. There's no other reason that Mr. Boucher would have been in that area. It's a far off location. It's similar to Perkins, where the court noted there that traveling to a far off location requires inducement in the form of pay to get workers to travel that distance and go out in that site. The other thing that differentiates it, if you look at 9023, where the Longshore Workers' Compensation Act talks about employees, they give an example of an exclusion there. They list specifically individuals employed exclusively to perform office, clerical, secretarial, security, or data processing work are not covered by the Longshore Workers' Compensation Act unless they don't have a state workers' compensation law that applies to them. So if there's somebody that for reason wouldn't fall under the state that they live in, then they would be able to get the benefits of the Longshore Workers' Compensation Act even though they were unaccounted or even though they were something else. Mr. Boudreaux paid for the time in addition to being paid for the mileage? Yes, sir. Did he pay for his time? Yes. The clock started ticking when he left home? Yes, sir. And he was paid an identifiable amount for travel from his home to the dock. All right, Ms. Smith, thank you for your argument. If I could just ask a couple of procedural questions. Ms. Smith, I note that you filed a request for an enforcement decision by us enforcing the BRB decision. Is that necessary if, in fact, we deny the relief sought in the petition? No, as long as LWCC and the employer pays what's ordered. All right. And second, the attorney's fees and costs that you want, you want us to make that decision. Is that the standard procedure followed? Is it usually remanded to the BRB to compute that? The Longshore statute requires that I seek attorney's fees at each court level for the work that's before that court. I understand, but so you want us to calculate it ourselves as opposed to remanding the BRB to do so? No, sir. From my understanding, once you make a decision, if you rule in my favor, then I submit a motion for fees that has all my fees listed and everything outlined for y'all. In our court? Yes, sir. So it would be a supplemental motion after your ruling. And if I could say one thing about the difference between benefits for Mr. Bujo, between state comp and Longshore, his Longshore benefits are double indemnity. So double his pay are really close to it at this point, what he would get under state comp. In state comp, Mr. Bujo would be limited to $592 a week for the remainder of time that he's disabled. For Longshore, he gets two-thirds of his income, which was $1,650 at the time of the accident. That was his average weekly wage. So his initial payment was around $1,100. He also gets an annual increase on October 1st of every year. And this is going to be for the rest of his life. Mr. Bujo was a young man. He was in his 30s at the time of the accident. Ms. Smith, we got it. We got it. It's interesting to know, but it's not going to affect our decision, but it is responsive to an inquiry made earlier. Mr. Borel, you're standing by patiently. It's your turn. Thank you, Your Honor. May it please the Court. Your Honor, I don't think there's any question from anybody here that Mr. Bujo's work testing tanks on OCS platforms, which is what he was assigned to do on the day of his injury, had a substantial connection to OCS operations. The ALJ simply made the finding that getting himself and his equipment to the platform, which is what he was doing at the time of his injury, was part of the work that had a connection to OCS operations. Let me ask you, Mr. Borel, about that. Am I correct that we basically have this 1947 or whatever it is, Supreme Court case? We have Perkins out of whatever circuit that was, ninth, I think. There is no Fifth Circuit law on the, not to use a tainted phrase, on the coming and going on the transportation to a work site? Actually, Your Honor, I think we cited the Vincent case, which was a 1971 Fifth Circuit case, 441 F 2nd 446. That's in your brief? Yes, Your Honor. Okay, that's good. You don't, but it does support this point. I mean, I'm not saying this necessarily a question just because other circuits are dealt with it. I don't know what the absence of my jurisprudence on it means. It's not all that contested, or just what that means. It's really not contested at all, Your Honor. The coming and going rule and the transportation exception, the trip payment exception, are very well established. You can find them in lawsuits. So, it's not really a question that when a worker is getting paid for his trip, he's in the course of his employment. But one of the things that, I mean, I guess as Ms. Smith was saying, it's as in Mississippi Workers' Comp 2, which is my state, our state, of all three of us, we have similar rules. The actual similar Supreme Court case isn't even a Longshore Act case. It's a DC Workers' Comp Act case that borrows from the Longshore Act. Correct, Your Honor, but that provision is part of the DC Comp Act. Okay. It's pulled in from the Longshore Act to the DC Act. That's why that is the semilac. No, understood, but it is an odd point that what is so foundational isn't even directly on the circuit. You can proceed. All right. Thank you, Your Honor. Given the test that the Supreme Court adopted from the Ninth Circuit in the valid double decision, the ALJ was perfectly reasonable to find that part of the work that had a substantial connection to OCS operations was Mr. Boudreaux's travel to the OCS. And here's why. The Ninth Circuit, in setting forth the substantial nexus test, not only recognized that it was consistent with this court's test from before the Mildon-Bach decision, but it actually endorsed that test. And in fact, it used virtually the same language in formulating its test. The Mildon-Bach decision said you have to show a nexus, and to show the nexus, the claimant must show that the work being done furthers the operation of a fixed rig on the shelf and is in the regular course of extractive operations on the shelf. In the valid double decision, the Ninth Circuit said that to show the required nexus, the claimant must show that the work performed directly furthers OCS operations and is in the regular course of such operation. So the Ninth Circuit test adopted by the Supreme Court is virtually identical to this court's test from before the Mildon-Bach decision. The reason that's important is because in applying that test, this court repeatedly found that workers going to and from the OCS for their jobs were covered by OCSLA. It did so in the Beard case, where it found coverage for a Rastabad who was killed when a boat caught fire. It did so in the Stansbury case, when it found that a foreman who was traveling back from an OCS platform by helicopter and the helicopter crashed was covered because his work furthered the rig's operations and was in the regular course of extractive operations on the OCS. And it did so applying the same reasoning in the Barger case, where the court found coverage for a helicopter pilot who didn't work on the shelf, who was injured while transporting workers who did work on the shelf to the shelf. And on top of these, as Judge Southwick pointed out, the Ninth Circuit specifically recognized in Valedolid that a Rastabad traveling to the OCS by helicopter would likely be covered by its substantial nexus test. And that's an... Mr. Borel, what about the nature of these arguments for us to interrupt? I apologize. What do you make of the other example in the Ninth Circuit about the accountant? Is that example saying the accountant's still on shore? Or is the accountant, even if the accountant goes out to the rig for some purposes, that wouldn't be sufficient because he's doing accounting to not extractive It's not totally clear from the Ninth Circuit's decision, Yara, but I think the Supreme Court clears that up for us. Because what they say in their case, in their decision, is that we don't want to cover land-based office employees. And the example given by the Ninth Circuit was the accountant. But we don't have that problem here because... Well, let me ask before you leave that, because I want to make sure how these pieces fit. Is a rig-based accountant going to be covered? I don't know, Yara. I don't actually think there are any rig-based accountants. I mean, we can pick some other function that maybe would be closer to what might actually be asked out there. But let's say some crazy non-economic employer decides to stick an accountant out on his rig. And so that's the person who breaks his leg or something. So are we looking at the role to extractive operations in addition to where the person is located for his work? I think we're looking at both, Yara, but I think the rig-based part is probably more important, not only based on the Supreme Court's decision when it was talking about the simple but-for test and why it rejected the Third Circuit's test, but also when you look at the Baker test, the Baker case, which this court decided, the court said Mr. Baker was a carpenter and he was working on a housing module that was going to go out to one of these OCS rigs. But they said he's not covered because he is entirely land-based and his employer doesn't have anything to do with things once it gets out to the OCS either. So that was what this court focused on, and that's what they took out of the Supreme Court's decision in Valladolid. Would you say, Mr. Borrell, that everybody who works full-time or substantial majority of the time on the rig is covered, no matter their job? It depends on what they're doing, Your Honor. Well, that's what I asked. No matter their job, you say it's not so. Well, no, I think it is, Your Honor. What I'm trying to say is that if you're injured on the rig, then the Supreme Court basically said, if you're working on the rig, then you're covered. All of these permutations are for injuries that happen on land. So I think what you're now saying is the accountant who's stationed out there is a longshore covered person. If the court were to find that this was in the regular course of operations and it actually furthered extractive operations, probably. You can move on. You can forget my wonderings. I'm not entirely sure about that, Your Honor, but I think so. But to go back to this court's pre-Mills cases, all of these cases treat the trip to and from the OCS as part of the work that furthers OCS operations and is in the regular course of those operations. And they're right to do so, Your Honor, because traveling to and from the OCS is in the regular course of OCS operations. It is a routine and necessary part of those operations. Workers don't stay on these platforms for the long term. They're usually there for a week on and a week off or two weeks on and two weeks off. Mr. Pedro said that his typical stay was 10 to 12 days. So in any event, these are relatively short stays and workers therefore have to travel back and forth in the regular course of OCS operations. That travel also furthers OCS operations because getting those operations can continue. But simply, if you stop the transportation of workers to the shelf, you stop extractive operations because there's no one there to do the work. Well, Mr. Borel, would you agree with what Ms. Smith said that when we're looking at my questions to her about deviations from the necessary route from wherever the starting point is to the place to pick up the transportation to the rig, that those are basically the kinds of concepts that general workers' comp law would explain if he had a stop along the way that took him out of his necessary route, all that sort of thing? Absolutely, Aaron. It's called frolicking detour and it's well established. Again, you can look at Larson's and there will be an entire section on it. So I don't think it's best to deal with that specifically for an OCSL case. Well, but we do need to avoid, it seems to me, a blanket statement that anybody whose destination is a place like Boudreaux was going is sufficient. He's got to be on that route or whatever. I mean, we don't have that issue here, but I think how we write an opinion, if we agree with you, is important. And that's why I'm asked about Ms. Smith's suggestion that there's a lot of law on that already, though it may not be under the Longshore Act. Yes, your honor. And again, it is a standard workers' comp black letter law. As a general rule, your honor, I think what makes sense for traveling employees is to say that a worker's travel should be covered if that travel is a necessary part of the day is assigned to OCS work. All right, Mr. Borough. Thanks for the five seconds back. We'll hear from Mr. Johnson in rebuttal as soon as your clock comes up. There it is. Thank you, your honor. Just a couple points. First of all, the traveling back and forth, that's the Curtis decision. And the Valladolid court said the Curtis decision is about foreclosures and that's not good enough. And all the discussion with the accountant brought up as I'm listening to it, I'm thinking, well, if we're going to use whether or not he's paid, whether or not he's given mileage. If we have an accountant who's paid for a minute, he walks out his front door and he's paid mileage to drive to work and he gets in an accident. Well, if that's going to be the standard, he's going to be covered. And that doesn't make any sense. That's not going to make any sense. What we have to do to make sense out of all of this, in my opinion, is we have to go back and look at the actual terms of the statute. And the statute says it covers injuries resulting from any injury occurring as the result of operations conducted on the outer continental shelf, not general duties out there, not whether you're out there from time to time it's from, were you injured or the injuries occur as a result of OCS operations. And in Mr. Boudreaux's case, the injuries did not occur as a result of OCS operations. They are not. You agree that he was going to the rig. He was going out on the rig. Your honor, I would agree he was going to the rig, but that goes to the issue of whether or not he's in the course and scope of his employment, the course and scope questions. I'm not aware of any and the court. But I thought I heard you saying his work didn't, didn't have anything to do with the operations. No, no, no, no. His work did, but the injury at the time that he was injured, he wasn't doing anything that had anything to do with the operations. There's nothing about his employer's operations that cause, but he couldn't do it until he got to the rig and that's where he was in. Right. And I understand that your honor. And that's, and that's the Curtis case. And the Curtis case is about for causation. There is a causation link, but it's about for causation. And that's not good enough. Uh, what we have, what the statute requires in my opinion, what the statute requires is a causative link between the injury and the operations. And in this case, other than, but for the fact he was traveling to go offshore, there's no way there was no link at all. So it's insignificant that, that Ms. Smith tells, tells us that someone had to go and get the equipment and get it out to the rig. But because his work, what he was going to do was that important to the operation. I'm not, I'm not certain. I'm not certain if that was in the record. I recall whether it was or it wasn't. Uh, but to me, as far as cause of the accident, no, it wouldn't be significant because you're in a situation where suppose, suppose, uh, uh, uh, the, the accountant couldn't do his reports on time. And for some reason they, they failed a, a government deadline and had shut the platform down. It would be the same sort of thing. Everybody, presumably everybody working out there has a job. Everybody has an obligation. Everybody has something that needs to be done. And if you're not there, well, then somebody has got to do it. We got to get the equipment there. We got to get a person to do something. I think if we look at the cases, we look at all the cases about coming and going and judge Southwick went through a detailed discussion on those. I am not aware of any case involving the coming and going rule that pivoted on jurisdiction. They're all course and scope of employment cases. As far as I know, if there's a case out there, I'm not aware of it. None of the coming and going cases have anything to do with jurisdiction. They have to do with, have you deviated from the course and scope of your employment? Are you covered by workers compensation? Yes or no. And that's a separate issue from what we have in this case, what we have, what, what distinction do you make between the fact that the act does not require the injury to result from a person's particular job, but instead result from extraction activities on the outer continental shelf. And it doesn't, it's not, I may have misspoke. I'm not saying that his particular job, he had to be particularly directly involved in the extraction. That's not my question. I'm looking at the text of the, of the section with which we're dealing. Correct. 1333B, I think, whatever it is in the Outer Continental Shelf Lands Act. It doesn't say resulting from his job on the outer continental shelf. It says resulting from extractions from the outer continental shelf, a bigger, a bigger path. Well, I don't see a distinction because we're saying that his, you know, on the one hand we're saying, well, he was required to be out there. His job required him to be involved in it. He's required, he's a necessary element to get the job done, to get the minerals extracted. So I don't see that there's a distinction. I think what we need to focus on is, did the activities of, involved in extraction of the minerals cause the injury? And in this case, they did not. All right, Mr. Johnson, your time is up. Appreciate everybody's assistance to us. And we'll get your decision as soon as we can. We are adjourned. Thank you, Your Honor.